# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARL ROE,** | : CIVIL ACTION NO. 1:17-CV-186 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **THE PENNSYLVANIA GAME COMMISSION**, *et al.*, | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Carl Roe ("Roe") commenced this action against the Pennsylvania Game Commission ("Commission"), as well as individual defendants Bradley C. Bechtel, Esq., Robert W. Schlemmer, David W. Schreffler, Charles E. Fox, Ronald A. Weaner,[1] David J. Putnam, James J. Delaney, Jr., Ralph Martone, Brian H. Hoover, and Timothy S. Layton pursuant to 42 U.S.C. § 1983 and state law. (See Doc. 1). Before the court is defendants' motion to dismiss (Doc. 9) filed pursuant to Federal Rule of Civil Procedure 12(b)6).[2] The court will grant defendants' motion.

---

[1] Defendant Ronald A. Weaner ("Mr. Weaner") is deceased. (See Doc. 10; see also Doc. 11 at 15 n.6). The court observes that no motion to substitute as to Mr. Weaner has been filed to date, and it has been more than 90 days since service of the statement (Doc. 10) noting Mr. Weaner's death. Hence all claims against Mr. Weaner will be dismissed. See FED. R. CIV. P. 25(a)(1).

[2] Roe also filed a request (Doc. 26) for oral argument on defendants' motion (Doc. 9) to dismiss. The court finds oral argument unnecessary to the disposition of the instant motion. We therefore deny Roe's request.

I.  **Factual Background & Procedural History**

Roe served as the Commission's executive director from December 30, 2005 through January 17, 2014.  (Doc. 1 ¶¶ 17, 33, 41).  Prior to his retirement, Roe entered into an agreement (the "original agreement") with the Commission's board of directors (the "Board") wherein he agreed, *inter alia*, to retire early, maintain confidentiality, and waive any future causes of action against the Commission and the Board in exchange for a one-time payment of $220,000.  (Id. ¶¶ 31-32; see also Doc. 1-2).  Roe retired on January 17, 2014.  (Doc. 1 ¶ 33).  The Board thereafter presented Roe with a second agreement (the "amended agreement") modifying the original.  (Id. ¶¶ 34-35; see also Doc. 1-3 ¶ 9).  Roe and the Board executed the amended agreement on January 27, 2014.  (Doc. 1 ¶ 35; see also Doc. 1-3 at 1).

The central purpose of the amended agreement was to "settle potential legal claims that the parties might have made against each other."  (See Doc. 1 ¶ 35; see also Doc. 1-3 ¶ 2).  The Board agreed to pay Roe $220,000 as consideration for the settlement "as soon as practically possible."  (Doc. 1 ¶ 35; see also Doc. 1-3 ¶ 2).  Roe and the Board also agreed to maintain confidentiality surrounding Roe's tenure as executive director and the terms of the amended agreement.  (Doc. 1 ¶ 35; see also Doc. 1-3 ¶¶ 5-6, 8).  The amended agreement expressly states that the one-time payment of $220,000 "shall be in addition to any regular payment and benefits and shall not be compensation but shall be consideration for settlement of potential legal claims."  (Doc. 1-3 ¶ 3).

The Office of the Pennsylvania Attorney General reviewed and approved both agreements.  (See Doc. 1 ¶¶ 32, 40).  Roe avers that defendants breached the

original and amended agreement by refusing to pay him "the agreed upon consideration" on or about March 18, 2014. (Id. ¶ 42). Roe has yet to receive the $220,000 payment. (Id. ¶ 44).

Roe filed a complaint in the Commonwealth Court of Pennsylvania asserting breach of contract and promissory estoppel claims against the Commission. (See id. ¶¶ 46-47). The Commonwealth Court sustained the Commission's preliminary objections and dismissed Roe's complaint. (See id. ¶¶ 48-51, 53; see also Doc. 1-4). On February 1, 2017, Roe commenced the instant action.[3] (Doc. 1). Roe asserts against all defendants a procedural due process claim under 42 U.S.C. § 1983 (Count I), and two state law claims for breach of contract and promissory estoppel (Counts II and III). (Id.) Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

---

[3] Roe filed a complaint with this court prior to resolution of his case before the Commonwealth Court. (See Doc. 1 ¶ 56); see also Roe v. Pa. Game Comm'n, No. 1:16-CV-89, Doc. 1 (M.D. Pa. Jan. 15, 2016). We dismissed Roe's complaint without prejudice on ripeness grounds. (See Doc. 1 ¶ 56); see also Roe, No. 1:16-CV-89, Doc. 20 (M.D. Pa. Aug. 22, 2016).

3

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

### III. Discussion

Defendants raise immunity, preclusion, and merits arguments in response to Roe's complaint. We begin our analysis with defendants' Eleventh Amendment and qualified immunity defenses to Roe's Section 1983 claim, and then turn to defendants' *res judicata* defense to Roe's state law claims.

#### A. Section 1983 Claim

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro,

51 F.3d 1137, 1141 (3d Cir. 1995)). Defendants do not dispute that they were state actors at all times relevant herein.

Roe alleges that defendants violated his procedural due process rights under the Fourteenth Amendment by failing to pay him in accordance with the original or amended agreement, and by effectively rendering both agreements valueless. He asserts this claim against the Commission and the individual defendants in their official and personal capacities.

### 1. *Eleventh Amendment Immunity*

Defendants assert Eleventh Amendment immunity as a jurisdictional defense to suit against the Commission and the individual defendants in their official capacities. The Eleventh Amendment precludes federal claims for monetary damages against a state and its agencies. U.S. CONST. amend. XI; see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008). This jurisdictional bar applies to agencies of the state and to employees thereof sued in their official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Hindes v. FDIC, 137 F.3d 148, 158 (3d Cir. 1998).

Eleventh Amendment immunity is not absolute. Its protections are subject to three basic limitations: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte* Young, 209 U.S. 123 (1908), a state official may be sued in their official capacity for prospective injunctive or declaratory relief. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Kentucky v. Graham,

473 U.S. 159, 169 n.18 (1985); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002). Roe invokes the second exception, positing that Pennsylvania's General Assembly waived sovereign immunity when it enacted 62 PA. CONS. STAT. § 1702(b).[4] (See Doc. 23 at 6, 14).

Section 1702(b) states in relevant part that the General Assembly waives sovereign immunity as a bar to claims against Commonwealth agencies brought under any of three statutory provisions: 62 PA. CONS. STAT. § 1711.1, which concerns "protests of solicitations or awards," 62 PA. CONS. STAT. § 1712.1, which concerns "contract controversies," or 62 PA. CONS. STAT. § 1721 *et seq.*, which concerns the Board of Claims. 62 PA. CONS. STAT. § 1702(b). The Commonwealth Court has already determined that neither the original nor the amended agreement fall into one of the three categories for which the General Assembly has waived sovereign immunity. See Roe v. Pa. Game Comm'n, 147 A.2d 1244, 1252-53 (Pa. Commw. Ct. 2016). We find that collateral estoppel bars Roe from reasserting that Pennsylvania waived sovereign immunity.[5]

---

[4] Roe attempts to invoke the third exception in his opposition brief by recasting his claim for the $220,000 settlement payout as a request for injunctive relief. (See Doc. 23 at 15-16). We reject this attempt. Roe's complaint seeks relief exclusively in the form of monetary damages. (See Doc. 1 ¶ 67).

[5] Defendants highlight the Commonwealth Court's earlier holding, (see Doc. 11 at 1, 3, 8), but do not expressly invoke the doctrine of collateral estoppel in their motion or supporting briefs. However, a district court may apply the doctrine *sua sponte*. See Brewer v. Hopple, No. 1:15-CV-0942, 2015 WL 3754548, at *5 (M.D. Pa. June 16, 2015); Tretter v. Shiptoski, No. 3:12-CV-0302, 2013 WL 12091668, at *1 n.2 (M.D. Pa. Mar. 21, 2013); Walsh v. Quinn, No. 09-167, 2009 WL 2207816, at *4 (W.D. Pa. July 23, 2009).

Collateral estoppel, also referred to as issue preclusion, bars relitigation of an issue that was conclusively determined in a prior adjudication. See Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999). The doctrine promotes fairness by foreclosing a "losing litigant" from disputing an issue on which a court has already ruled. See B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. ___, 135 S. Ct. 1293, 1302-03 (2015) (quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)). Estoppel also fosters certainty in "judicial action by minimizing the possibility of inconsistent verdicts." See id. (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)). Because we have identified the judgment of the Commonwealth Court for potential preclusive effect, Pennsylvania preclusion law applies. R&J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery, 670 F.3d 420, 426-27 (3d Cir. 2011) (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982)).

Under Pennsylvania law, collateral estoppel precludes relitigation of an issue when:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005). If any of these elements are not satisfied, collateral estoppel does not apply. See Skotnicki v. Ins. Dep't, 175 A.3d 239, 249 (Pa. 2017).

8

The five requirements are satisfied *sub judice* such that Roe is estopped from relitigating the instant dispute. The issue in the antecedent action is identical to the issue before this court—whether Pennsylvania waived its sovereign immunity such that suit can be brought against the Commission and the individual defendants in their official capacities. See Roe, 147 A.2d at 1246, 1249, 1252. This issue was actually litigated before the Commonwealth Court, and resolution of the issue resulted in dismissal of Roe's claims as barred by sovereign immunity—a valid and final judgment on the merits. See generally id. Further, the parties involved are the same or in privity with one another since both Roe and the Commission were parties in the antecedent action.[6] See generally id.

It is beyond peradventure that Roe had a full and fair opportunity to litigate the waiver issue in a prior action. See generally id. Indeed, Roe acknowledges that the Commonwealth Court heard oral argument *twice* before entering its judgment. (Doc. 23 at 2). We conclude that Roe is collaterally estopped from relitigating whether Pennsylvania waived its sovereign immunity. The Commission and the individual defendants in their official capacities are immune from suit pursuant to the Eleventh Amendment. Accordingly, the court will grant defendants' motion to dismiss the Section 1983 claim against those defendants.

---

[6] Although the individual defendants were not named in the antecedent action, they are in privity with the Commission to the extent they are sued in their official capacities. See Duran v. Cty. of Clinton, No. 4:14-CV-2047, 2015 WL 5675580, at *6 (M.D. Pa. Sept. 25, 2015) (Conner, C.J.).

9

## 2. *Procedural Due Process*

Roe avers that the individual defendants violated his Fourteenth Amendment right to due process in their personal capacities by interpreting Pennsylvania law "as giving Commonwealth agencies sovereign immunity from all breach of contract claims or quasi contract claims" except as specifically delineated. (See Doc. 1 ¶ 61). He maintains that their interpretation of Pennsylvania law deprived him of a "liberty interest in his freedom to contract," (see id. ¶ 65), and a property interest in "the consideration" due to him under the amended agreement, (see id. ¶ 67). Each individual defendant invokes the doctrine of qualified immunity. The court will thus address Roe's procedural due process claim through the prism of qualified immunity.[7]

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will]

---

[7] To the extent Roe urges the court to consider a substantive due process claim, (see Doc. 23 at 7-9), the court declines to do so as that claim is not raised in the complaint. See Canty v. Ebbert, No. 1:15-CV-0064, 2016 WL 2961263, at *2 (M.D. Pa. May 23, 2016) (citing Commonwealth *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)).

be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. See Pearson, 555 U.S. at 237. In Pearson, the Supreme Court recognized that, in certain circumstances, a case may be easily resolved by addressing the clearly established prong at the outset. See id. Such is the case with the individual defendants' asserted qualified immunity defense.

A court must "frame the precise contours" of the right at issue before determining whether that right is clearly established. Spady, 800 F.3d at 638. A Section 1983 plaintiff need not produce a directly analogous case to prove that a right is clearly established, but there must exist Supreme Court precedent or a "robust consensus of cases of persuasive authority" at the time of the challenged conduct to "place[ ] the . . . constitutional question beyond debate." Taylor v. Barkes, 575 U.S. \_\_\_, 135 S. Ct. 2042, 2044 (2015) (per curiam) (citations and quotation marks omitted). Courts must exercise care "not to define clearly

11

established law at a high level of generality." al-Kidd, 563 U.S. at 742. Rather, courts must endeavor to frame the right in light of the specific context of the matter at bar. See Spady, 800 F.3d at 638 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001); Anderson, 483 U.S. at 639).

Neither party consistently defines the constitutional question *sub judice*. Defendants initially frame the issue as whether Roe had a clearly established right to "circumvent the doctrine" of sovereign immunity. (See Doc. 11 at 13). But later describe it as whether Roe had a constitutional right to payment pursuant to "an ordinary state law contract." (See Doc. 25 at 3-5). Roe, in his opposition brief, defines the issue as whether he had a clearly established right to "receive the consideration contracted for under the Settlement Agreement"—despite casting a wider net in his complaint, as outlined *supra*, by asserting that the individual defendants' interpretation of Pennsylvania law deprived him liberty *and* property interests. (Compare Doc. 23 at 17-18, with Doc. 1 ¶¶ 61, 65-67).

To adopt either party's characterization of the right at issue would cut against the court's responsibility to frame constitutional inquiries "in light of the case's specific context, not as a broad general proposition." Spady, 800 F.3d at 638 (quoting Saucier, 553 U.S. at 201). The Third Circuit Court of Appeals has cautioned that accepting such generic definitions would allow litigants to transform qualified immunity "into a rule of virtually unqualified liability by simply alleging violation of extremely abstract rights." Spady, 800 F.3d at 638 (quoting Anderson, 483 U.S. at 639). Consequently, the court regularly rejects efforts to define clearly

established rights in sweeping constitutional generalities.  See, e.g., Michtavi v. Scism, 808 F.3d 203, 206-07 (3d Cir. 2015); Spady, 800 F.3d at 638-39.

The court finds that a properly tailored definition of the issue, informed by Roe's *allegata* as well as his opposition brief, is as follows: whether a state employee has a constitutionally protected property right in consideration bargained for in a settlement agreement entered into with his employer.  This definition contextually aligns with the facts of this case and derives from Roe's averments that defendants' actions rendered both agreements "essentially valueless," (see Doc. 1 ¶ 65), violated his "due process rights as guaranteed by the Fourteenth Amendment," (id. ¶ 66), and resulted in defendants' wrongful retention "of the consideration due [Roe] for in excess of two (2) years," (id. ¶ 67).

Third Circuit precedent establishes that Roe does not have a constitutionally protected property right to the $220,000 bargained for in either agreement.  The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  To prevail on a Section 1983 procedural due process claim, a plaintiff must demonstrate that (1) he was deprived of a protected liberty or property interest under the Fourteenth Amendment, and (2) the procedures afforded him failed to comport with the requirements of due process.  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

Roe asserts that defendants deprived him of a property interest in the amount owed to him under either agreement.  (See Doc. 1 ¶¶ 66-67).  A property

interest protected by the Fourteenth Amendment exists only if the plaintiff has "a legitimate claim of entitlement" to the interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); Hill, 455 F.3d at 234; Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). Property interests entitled to constitutional protection are created from "independent source[s]", such as state law. Burella v. City of Philadelphia, 501 F.3d 134, 141 (3d Cir. 2007) (quoting Roth, 408 U.S. at 577).

Under Pennsylvania law, protected property interests arise in three ways: *first*, through legislative action or authorization, see Dee v. Borough of Dunmore, 549 F.3d 225, 229-30 (3d Cir. 2008); Pivarnik v. Commonwealth, Dep't of Transp., 474 A.2d 732, 734 (Pa. Commw. Ct. 1984); *second*, through a contract that grants the plaintiff protected status, such as employment tenure or welfare benefits, see Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991); and *third*, through a contract permitting termination only for cause, see id.; see also Linan-Faye Constr. Co. v. Hous. Auth. of Camden, 49 F.3d 915, 932 (3d Cir. 1995).

Roe does not allege that he has a protected property interest in the amount owed to him under either the original or amended agreement pursuant to action or authorization by the General Assembly. And his contract with the Commission does not fall into either of the two categories of contracts recognized by the Third Circuit as creating a constitutionally protected property interest. The original and amended agreement do not grant Roe a protected status characterized by either "extreme dependence" or "permanence" that Roe relies on in his daily life. See Baraka v. McGreevey, 481 F.3d 187, 207-08 (3d Cir. 2007); see also Seacrist v. Skrepenak, No. 3:07-CV-2116, 2009 WL 959640, at *5 (M.D. Pa. Apr. 6, 2009). Roe

14

has not alleged that his "day-to-day survival" is threatened by the Commission's failure to pay him the $220,000. See Piekutowski v. Township of Plains, No. 3:05-CV-2078, 2006 WL 3254536, at *5 (M.D. Pa. Nov. 9, 2006). Indeed the plain terms of both agreements state that the one-time payment of $220,000 is not compensation and would be "in addition to any regular payment and benefits." (See Doc. 1-2 ¶ 3; Doc. 1-3 ¶ 3). Further, Roe concedes that both agreements "are not grounded in [his] employment." (Doc. 1 ¶ 64). Roe has also not shown that either agreement could only be terminated for cause. Compare Baraka, 481 F.3d at 207, and Linan-Faye, 49 F.3d at 932, and Unger, 928 F.2d at 1399, with Dee, 549 F.3d at 231. Roe did not have a clearly established constitutional right to the consideration due under either the original or amended agreement. As a consequence, the individual defendants are entitled to qualified immunity on Roe's Fourteenth Amendment due process claim against them in their personal capacities.

### B. State Law Claims

Defendants urge the court to decline to exercise supplemental jurisdiction over Roe's remaining state law claims. In the alternative, defendants contend that Roe's state law claims are barred pursuant to *res judicata*. We address these issues *seriatim*.

#### 1. *Supplemental Jurisdiction*

Dismissal of all federal claims requires the court to consider whether the federal judiciary remains the proper forum for adjudication of any remaining state law claims. Section 1367 of Title 28 of the United States Code vests the court with supplemental jurisdiction over state law claims which are closely related to other

15

claims arising under our original jurisdiction. See 28 U.S.C. § 1367(a). Dismissal of federal claims does not automatically deprive the court of jurisdiction over the state claims, but provides a basis on which supplemental jurisdiction may be declined. See id. § 1367(c); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). The Third Circuit has held that the court must dismiss pendent state claims when the federal claims over which the court has original jurisdiction are dismissed "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Lancaster, 45 F.3d at 788; see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). Both parties agree that Roe's state law claims would be time barred if filed in state court. See 42 PA. CONS. STAT. § 5524(6); (see also Doc. 11 at 19; Doc. 23 at 21). Thus, fairness dictates that the court exercise supplemental jurisdiction over Roe's state claims.[8]

### 2. *Res Judicata*

*Res judicata*, also known as claim preclusion, bars subsequent actions between "parties or their privies on the same cause of action" when a court of competent jurisdiction has already issued a "final, valid judgment on the merits." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (1995)). As indicated *supra*, when a party asserts the preclusive effect of a state court judgment, the

---

[8] The court notes that although Roe filed the instant complaint (Doc. 1) outside of the two-year statute of limitations set forth in 42 PA. CONS. STAT. § 5524(6), his original complaint before this court was timely filed, see Roe v. Pa. Game Comm'n, No. 1:16-CV-89, Doc. 1 (M.D. Pa. Jan. 15, 2016), and dismissed on ripeness grounds without prejudice pending the Commonwealth Court's decision, see Roe, No. 1:16-CV-89, Doc. 20 (M.D. Pa. Aug. 22, 2016).

16

preclusion rules of that state govern the analysis. See id.; Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). Defendants argue that the Commonwealth Court's decision precludes Roe from asserting his state law claims hence Pennsylvania preclusion law applies. Under Pennsylvania law, the previous and current action must share four elements for *res judicata* to apply: "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued." Daley v. A.W. Chesterton, Inc., 37 A.3d 1175, 1189-90 (Pa. 2012).

i. **State Law Claims Against the Commission**

Roe asserted three breach of contract claims as well as a promissory estoppel claim against the Commission in the state proceeding. See Roe, 147 A.2d at 1247. He alleged that the Commission breached the original agreement (Count I), the amended agreement (Count II), and the original agreement, as amended by the amended agreement (Count III). See id. Roe premised his promissory estoppel claim (Count IV) on his "detrimental reliance on the Commission's promises." See id. The state law claims against the Commission in the instant suit are identical to the claims against the Commission before the Commonwealth Court. (Compare Doc. 1 ¶¶ 68-84), with Roe, 147 A.2d at 1247; (see also Doc. 1 ¶¶ 46-47). The identity of the parties is the same, both parties have the same capacity to sue and be sued, and the actions are premised on identical issues—the alleged breach of the original and amended agreement and Roe's detrimental reliance on said agreements. The Commonwealth Court has already determined that sovereign immunity bars Roe from asserting these claims against the Commission. See Roe, 147 A.2d at 1245,

17

1254. Hence, *res judicata* precludes Roe from reasserting these claims in federal court. The court will dismiss Roe's state law claims against the Commission.[9]

## ii. State Law Claims Against the Individual Defendants

The state law claims against the individual defendants in their official capacities are barred pursuant to *res judicata* for the reasons discussed *supra*. A suit against a government official in his or her official capacity is synonymous with a claim against the government entity itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)); Gregory, 843 F.2d at 120. The individual defendants in their official capacities, because they are in privity with the Commission, are "entitled to the benefit" of the Commonwealth Court's judgment. See Gregory, 843 F.2d at 120.

Roe's state law claims against the individual defendants in their personal capacities are not barred under *res judicata*. There is no automatic privity between the Commission and the individual defendants in their *personal* capacities. See Gregory, 843 F.2d at 119-21. Further, their interests are not identical such that the Commission's interest in defending itself before the Commonwealth Court covered the personal interests of the individual defendants. See Montella v. Berkheimer

---

[9] Roe argues that the Commonwealth Court's decision was not a final judgment on the merits because the court dismissed Roe's complaint without prejudice. (See Doc. 23 at 19-20). This argument is unavailing. See Fiumara v. American Surety Co. of New York, 31 A.2d 283, 287 (Pa. 1943); see also DeHaven v. Armstrong World Indus. Inc., 42 Pa. D. & C.3d 516, 521-22 (Pa. Ct. Com. Pl. Dec. 5, 1986). The Commonwealth Court's use of the phrase "without prejudice" signaled only that Roe's claims were barred "[u]ntil such time as the General Assembly clarifies that the Board's jurisdiction applies to disputes arising from . . . settlement agreements." See Roe, 147 A.2d at 1254; see also Fiumara, 31 A.2d at 287.

Assocs., 690 A.2d 802, 804 (Pa. Commw. Ct. 1997). However, Roe fails to allege sufficient facts from which the court could conclude that the individual defendants are *personally liable* for either breach of contract or promissory estoppel. Accordingly, the court will grant the motion to dismiss Roe's state law claims against the individual defendants in their official and personal capacities.

### C. Leave to Amend

Roe's Section 1983 claim against all defendants and his state law claims against the Commission and the individual defendants in their official capacities are legally incurable and will be dismissed with prejudice. To the extent Roe's state law claims against the individual defendants are factually rather than legally flawed, the court will grant Roe a final opportunity to amend his pleading as more fully articulated in the forthcoming order.

## IV. Conclusion

The court is not unsympathetic to the harsh consequences emanating from Roe's litigation experience. However, collateral estoppel and *res judicata* principles constrain this court's ability to second guess the Commonwealth Court's decision and to evaluate Roe's claims against the Commission and the individual defendants in their official capacities. In the absence of any clearly articulated state law claim against the individual defendants in their personal capacities coupled with Roe's failure to assert a legally cognizable federal law claim against the same defendants, the court must grant defendants' motion (Doc. 9) to dismiss. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: March 12, 2018